IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA E. LACKEY,

          Plaintiff,

    v.                                                   CIVIL ACTION
                                                           NO. 15-415

HEART OF LANCASTER REGIONAL
MEDICAL CENTER,

          Defendant.

**MEMORANDUM OPINION**

**Schmehl, J.** /s/ JLS                                                                **September 29, 2016**

## I.     INTRODUCTION

       Plaintiff, Linda E. Lackey, brings this suit against her former employer, Heart of Lancaster Regional Medical Center ("Defendant"), under the Age Discrimination in Employment Act ("ADEA"), 29 U. S. C. §§ 621-634, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., alleging that Defendant terminated her employment because of her age and alleged disability. Before the Court is the Motion for Summary Judgment of Defendant, Defendant's Statement of Undisputed Facts, Plaintiff's Answer to Defendant's Statement of Facts and Counter-Statement of Undisputed Material Facts, as well as Plaintiff's response in opposition to the motion, and Defendant's reply. For the following reasons, Defendant's motion is granted.

## II.     LEGAL STANDARD

       Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of

some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### III. FACTUAL BACKGROUND

Plaintiff worked at Defendant hospital and its predecessors starting in 1965. (ECF 19, Ex. A, pp 72, 74.) She worked a variety of clerical jobs, was Supervisor of Admissions from 1980 to 1990, and starting in 2006 until the time of her termination, worked as a scheduler in the Radiology Department of Defendant hospital and its predecessor, Community Hospital of Lancaster. (ECF 19, Ex. A, pp. 72, 74, 88, 93.) As a scheduler, Plaintiff was responsible for scheduling appointments for radiology, cardiology and respiratory therapy. (ECF 19, Ex. B, p. 17.) As part of her duties, Plaintiff

would schedule appointments for CAT scans, MRIs, ultrasounds, x-rays and mammograms. (ECF 19, Ex. A, p. 101.) She would receive telephone calls from patients and/or patient's physicians and would ask the individuals relevant questions depending upon which procedure they would be undergoing. (ECF 19, Ex. A, pp. 126, 142-143; Ex. B, p. 17.) Plaintiff would gather patient information, input it into the computer system, advise the patient of any pre-testing procedures, verify the patients' insurance, confirm that the insurance authorized the procedure being scheduled and then schedule the appointment. (ECF 19, Ex. A, pp. 144, 146-147, 149, 152.) Susan DelGiorno-Ream became Plaintiff's supervisor in 2008. (ECF No. 20, Ex. P2, p. 15.)

Plaintiff received verbal counseling for work errors in January 2006, May 2008 and December 2008. (ECF 19, Ex. C; Ex. E; Ex. F.) Further, according to a Corrective Action/Discipline Record dated May 29, 2008, Plaintiff was verbally counseled "ten or greater times" between October of 2007 and May of 2008 by her supervisor, Susan DelGiorno-Ream. (ECF 19, Ex. E.) Pursuant to a February 19, 2008 Competency Skill Assessment, Plaintiff needed to improve her understanding of what questions needed to be asked for each procedure and providing patients with the correct information for the test that was scheduled. (ECF 19, Ex. D.)

Plaintiff's 2008 performance evaluation awarded her a total evaluation score of 3.07 on a scale of 1 to 5, taking into account "position accountabilities," "core competency" and attendance. (ECF 19, Ex. G, p. 9.) Plaintiff's 2009 performance evaluation awarded her a total evaluation score of 3.24, taking into consideration the same factors. (ECF 19, Ex. H, p. 11.)

In March of 2011, Plaintiff received a written warning for not performing the proper patient screening for an MRI. (ECF 19, Ex. I.) Plaintiff's 2011 performance evaluation awarded her a total evaluation score of 2.99 on a scale of 1 to 5, again taking into account position accountabilities, core competency and attendance. (ECF 19, Ex. J, p. 10.)

In July of 2012, Ms. DelGiorno-Ream, Plaintiff's supervisor, asked Plaintiff how old she was and whether she planned to retire soon. (ECF 19, Ex. A, pp. 254-255, 257.) Ms. DelGiorno-Ream had never before made any comments about Plaintiff's age or plans to retire and never made any such comment again. (ECF 19, Ex. A, pp. 260-262.) On July 25, 2012, Plaintiff emailed Brian Hoffman, Director of Human Resources, and complained that Ms. DelGiorno-Ream had harassed her because of her age. (ECF 19, Ex. K.) She stated that she was being "pushed out the door" and felt incredible pressure to retire. (ECF 19, Ex. K.) A meeting was then held with Mr. Hoffman, Ms. DelGiorno-Ream and Plaintiff to discuss the issue, and Plaintiff testified that "at that point maybe whatever issues [she] had had been resolved." (ECF 19, Ex. A, pp. 264, 266.) Ms. DelGiorno-Ream apologized to Plaintiff. (ECF No. 20, Ex. P2, p. 51.)

Plaintiff received her 2012 performance evaluation and was awarded a 3.01 score, taking the same factors into consideration as previous years. (ECF 19, Ex. L, p. 11.) On February 23, 2012, Plaintiff received an "Associate Discipline/Action Plan" for "several scheduling errors," and Plaintiff was advised to pay "[a]ttention to details." (ECF 19, Ex. M.) On January 11, 2013, Plaintiff received an Associate Corrective Action Plan, a written warning, for substandard work, and was reminded to pay "[a]ttention to detail" and "follow through on scheduled procedures." (ECF 19, Ex. O.) On October 30, 2013,

4

Plaintiff received another Associate Corrective Action Plan, her second written warning for substandard work. (ECF No. 19, Ex. N.) She was reminded again to pay "[a]ttention to detail" and "follow through on scheduled procedures." (ECF No. 19, Ex. N.)

On December 6, 2013, Plaintiff received yet another Associate Corrective Action Plan, her third and final warning, for substandard work and continued scheduling errors. (ECF No. 19, Ex. P.) At this time, Ms. DelGiorno-Ream recommended that Plaintiff have all her work reviewed by a co-worker, Tiffany Toburen, and stated that all Plaintiff's errors would be reviewed on a bi-weekly basis. (ECF No. 19, Ex. P, Ex. A, p. 30.) This document also stated that "[c]ontinued errors without improvement and/or error(s) resulting in delay of care of any patient(s) will result in additional corrective action up to and including termination." (ECF No. 19, Ex. P.) Plaintiff was also placed on a Work Improvement Plan wherein she was advised to decrease scheduling errors within thirty (30) days. (ECF No. 19, Ex. Q.)

In December of 2013, Defendant Hospital implemented a new computer scheduling system, and Plaintiff and her fellow schedulers received four (4) hours of training on the new system, as well as written materials. (ECF No. 19, Ex. A, pp. 175, 180-182; Ex. R; Ex. S.) Plaintiff testified that she did not understand the new system "real well," but she did not recall ever asking for assistance. (ECF No. 19, Ex. A, pp. 174, 189.) On the day the new scheduling system "went live," Plaintiff suffered an anxiety attack at work. (ECF No. 19, Ex. A, p. 195.) She felt flushed and had difficulty breathing, causing her to leave her work area for no more than ten (10) minutes. (ECF No. 19, Ex. A, pp. 195-196.) Plaintiff testified that several days after this incident, she was advised by Ms. DelGiorno-Ream that it was unacceptable to get up and leave the office

5

unannounced, at which point Plaintiff informed Ms. DelGiorno-Ream that she had an "anxiety attack." (ECF No. 19, Ex. A, pp. 200-201.) Plaintiff testified that she had experienced two or three similar incidents during her employment, including one approximately six (6) months prior when she became unable to breathe, started to sweat and had to leave her work area for five (5) minutes. (ECF No. 19, Ex. A, pp. 192-194.)

Plaintiff's 2013 performance evaluation awarded her an evaluation score of 2.35, again taking into account position accountabilities, core competency and attendance. (ECF No. 19, Ex. T.) In her comments to this evaluation, Plaintiff mentioned that in the past she had anxiety attacks that forced her to step outside and regain control, but that she was now taking medication to control them. (ECF No. 19, Ex. T.)

Plaintiff met with Ms. DelGiorno-Ream on January 30, 2014, to discuss her continued scheduling errors. (ECF No. 19, Ex. U.) Plaintiff continued to make scheduling errors, and in early February 2014, Ms. Del-Giorno-Ream recommended that Plaintiff's employment be terminated. (ECF No. 19, Ex. V, Ex. B, p. 67.) On February 13, 2014, Plaintiff was presented with an Associate Corrective Action Plan which recommended her termination effective February 14, 2014 for substandard work. (ECF No. 19, Ex. V.) This document stated that based on the "1/8/13 written correction, 9/27/13 2nd written correction, 10/30/13 review of errors and 11/27/13 3rd written action plan and 30 and 60 day reviews," and Plaintiff's failure to meet the requirements of the action plan, her employment was being terminated. (ECF No. 19, Ex. V.)

Plaintiff was ultimately replaced by Geneva Diem in May of 2014, who was 43 years old at the time of her hiring. (ECF No. 20, Ex. P2, p. 61; Ex. P3, Interrogatory No. 12.) Plaintiff elicited testimony from Ms. DelGiorno-Ream that Plaintiff had an "odor,"

6

that it was sometimes "offensive," and affected her ability to do her job because she was "uncomfortable" being in a small room with Plaintiff. (ECF No. 20, Ex. P2, pp. 69-70.) Ms. DelGiorno-Ream testified that occasionally other schedulers would complain to her of the odor, and that she had a talk with Plaintiff about the odor, which she described as a "smoky, musty odor that [Plaintiff] tried to cover up with perfume" and that DelGiorno-Ream thought was due to Plaintiff's smoking. (ECF No. 20, Ex. P2, pp. 70, 72-74.) Pam Zook, a fellow scheduler, testified that Plaintiff exhibited an "odor." (ECF No. 20, Ex. P5, p.22.) Tiffany Toburen, another fellow scheduler, testified that Plaintiff's odor was "very strong" and "unbearable in the workplace." (ECF No. 20, Ex. P6, pp. 50-51.)

DelGiorno-Ream also testified that Plaintiff had told her that she had trouble hearing on her headset and that she had hearing aids. (ECF No. 20, Ex. P2, pp. 82-84.) Pam Zook testified that Plaintiff's hand tended to shake, and that her body was "unsteady," (ECF No. 20, Ex. P5, p. 21,) and Tiffany Toburen was aware that Plaintiff had a tremor or shake in her right hand. (ECF No. 20, Ex. P6, p. 38.)

In terms of Plaintiff making errors at work, DelGiorno-Ream stated that she did not expect "100%" from her staff at all times and that it was ok for people to make mistakes. (ECF No. 20, Ex. P2, p. 59.) Geneva Diem, 43 years old at the time of her deposition, testified that during her training period, she made mistakes but was not written up for them, and that she had never been written up by Toburen for mistakes. (ECF No. 20, Ex. P3, pp. 16-17.) Pam Zook, 40 years old at the time of her deposition, admitted to making scheduling mistakes "maybe, under five times in the seven months" that she worked for Defendant hospital, and was never written up or verbally coached for her mistakes. (ECF No. 20, Ex. P5, pp. 11-12, 16.)

Tiffany Toburen, 30 years old at the time of her deposition, was first employed as a scheduler under DelGiorno-Ream. (ECF No. 20, Ex. P6, pp. 8-9, 12.) She testified that DelGiorno-Ream talked to her about errors or mistakes that Toburen made while DelGiorno-Ream her supervisor, but Toburen did not recall if DelGiorno-Ream had ever "written her up." (ECF No. 20, Ex. P6, pp. 14, 19-22.)

Toburen was the employee that DelGiorno-Ream assigned to help Plaintiff learn how to use the "new" system; however, Toburen testified that she had not used the system yet herself. (ECF No. 20, Ex. P6, p. 16.) Toburen got frustrated with Plaintiff while training her on the new system, and complained to DelGiorno-Ream about Plaintiff "more than 20 times." (ECF No. 20, Ex. P6, pp. 18, 22.) Toburen was not asked to monitor any employees other than Plaintiff. (ECF No. 20, Ex. P6, pp. 22, 23.)

## IV. DISCUSSION

Plaintiff's Complaint contains 2 counts: Count I for ADEA Age Discrimination/Retaliation and Count II for violations of the Americans with Disabilities Act and Retaliation.[1]

### A. ADEA DISCRIMINATION

Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of an individual's age. 29 U.S.C. § 623(a)(1). When analyzing claims under the ADEA where, as here, there is an absence of direct evidence of discrimination, the Court applies the burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Ordinarily, to make

---

[1] On February 26, 2015, Plaintiff voluntarily withdrew Count III of her complaint, which set forth a claim under the Pennsylvania Human Relations Act. (ECF No. 5.)

8

out a *prima facie* case under McDonnell-Douglas in an ADEA case, "the plaintiff must show (1) that he was at least forty years of age or older, (2) that the defendant took an adverse employment action against the plaintiff, (3) that he was qualified for the position in question, and (4) that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

Establishment of a *prima facie* case creates a presumption of discriminatory intent that a defendant has the burden to rebut by setting forth some legitimate non-discriminatory reason for its actions. McDonnell-Douglas, 41 U.S. at 802. If the employer does so, the presumption of discrimination drops out and the plaintiff must then "demonstrate that the employer's proffered rationale was a pretext for age discrimination." Smith v. City of Allentown, 589 F.32d at 689.

In order to demonstrate pretext, plaintiff "must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco v. Runyon, 190 F.3d 151, 165-66 (3d Cir. 1999)(emphasis in original)(quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Plaintiff cannot "simply show that [defendant's] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated [defendant], not whether [defendant] is wise, shrewd, prudent or competent." Fuentes, 32 F.3d at 765. Instead, plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its

9

action that a reasonable fact finder <u>could</u> rationally find them unworthy of credence, and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." <u>Id.</u> (emphasis in original) Ultimately, plaintiff must prove that age was the but for cause of her termination. <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 180 (2009).

In the instant matter, Defendant conceded, for the purposes of summary judgment only, that Plaintiff can make out a *prima facie* case of discrimination. (ECF No. 18, p. 5.) The burden then shifts to Defendant to "identify a legitimate non-discriminatory reason for the adverse employment action." <u>Smith</u>, 589 F.3d at 689. Plaintiff has conceded, for the purposes of summary judgment, that Defendant can set forth a non-discriminatory reason for its employment action. (ECF No. 20, p. 10.) Therefore, the burden shifts back to Plaintiff to prove that Defendant's proffered reason for her termination was "merely a pretext for discrimination, and not the real motivation for the unfavorable job action." <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003).

In the instant matter, Defendant presented overwhelming evidence that Plaintiff's employment was terminated for her ongoing poor work performance. Plaintiff received multiple verbal and written warnings and was put on a work improvement plan. Her yearly reviews showed average scores around 3 on a scale of 1 to 5. In order to establish a genuine issue of fact as to pretext in order to defeat summary judgment, Plaintiff must show that Defendant's proffered reason of poor work performance is "weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence." <u>Sarullo</u>, 352 F.3d at 800. Accordingly, Plaintiff must "present evidence contradicting the core facts put forward by defendant as the legitimate reason[s] for its decision." <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 467 (3d Cir. 2005). This type of

showing will "require the production of documents or deposition testimony at odds with defendant's proffered explanation." Furru v. Vanguard Group, Inc., 2015 WL 5179407 (E.D. Pa . Sept. 4, 2015).

Plaintiff does not dispute her repeated scheduling errors, nor does she claim her warnings and evaluations were incorrect or discriminatory. Rather, Plaintiff attempts to establish pretext by arguing that she was treated differently than similarly-situated employees. Plaintiff asserts that she was replaced by a significantly younger individual and that DelGiorno-Ream disciplined her in a disproportionate manner to her younger co-workers.

Plaintiff claims that "reasonable fact-finders could conclude that DelGiorno-Ream dished out discipline in a disproportionate manner that was really pretext for age discrimination," and that Plaintiff's "younger comparators, who were similar in all respects, were undoubtedly treated more favorably by DelGiorno-Ream." (ECF No. 20, p. 13.) It is undisputed that Plaintiff made multiple errors in her job, for which she received discipline in the form of verbal and written warnings. Plaintiff seems to be hanging her pretext argument on the deposition testimony of her former co-workers Toburen, Zook and Diem that they made mistakes on the job and weren't disciplined. Diem testified that she made scheduling mistakes during her training period. Zook testified that she made "maybe" fewer than five mistakes early in her employment with Defendant. (ECF No. 20, Ex. P5, p. 16.) Toburen testified that at some point, DelGiorno-Ream spoke to her about "maybe an error or two that [she] had made." (ECF No. 20, Ex. P6, p. 13.)

Inconsistent application of workplace discipline can give rise to the inference of discrimination. Pivirotto v. Innovative Systems, 191 F.3d 344, 354 (3d Cir. 1999). However, the "employees must be similarly situated, at least as to the weight and number of workplace transgressions if not as to the type of transgressions, for comparisons of discipline to be valid." Skrocki v. Carpenter Technology Corp., 2007 WL 1002122, * 4 (E.D. Pa., Mar. 30, 2007).

In the instant matter, Plaintiff has failed to present evidence that she was similarly situated to Diem, Zook or Toburen; therefore, she cannot point to DelGiorno-Ream's treatment of them as evidence that Defendant discriminated against her. "In the context of disciplinary cases or personnel actions, employees can be established as similarly situated by showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Parker v. Farley, 625 Fed.Appx. 77, 82 (3d Cir. 2015)(citing Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). As discussed above, Plaintiff was terminated after two written corrections in January and September of 2013, a review of errors in October of 2013, a third written action plan in November of 2013 and a 30 and 60 day review. Plaintiff cannot point to any evidence in the record before me that Diem, Zook or Toburen, her alleged comparators, had any disciplinary record at all, let alone one as extensive as Plaintiff's. The facts cannot show that Plaintiff and her alleged comparators were similarly situated; therefore, she cannot use the comparison of their experiences as evidence of a discriminatory animus behind her discharge. *See* Maull v. Div. of State Police, 39 Fed. App'x. 769, 773-774 (3d Cir. 2002)(finding plaintiff's

comparators were not similarly situated where "none of the white Troopers had nearly as extensive disciplinary records as [plaintiff]"); Oliver v. Clinical Practices of the Univ. of Pa., 921 F.Supp.2d 434, 448 (E.D. Pa. 2013)(defendant is entitled to summary judgment where, in part, "[p]laintiff has not pointed to any evidence that [a comparator] was at a similar disciplinary level as Plaintiff; Muor v. U.S. Bank Nat. Ass'n, 716 F.3d 1072, 1078 (8th Cir. 2013)(finding that plaintiff could not establish other employees were similarly situated to her because she "offers no evidence that the comparator employees made similar errors, made errors as frequently as she, or that their level of experience was commensurate to hers")). Plaintiff has presented no evidence as to what errors each co-worker made, what discipline they received for the errors, if any, or how frequently these mistakes were made. No reasonable jury could conclude, based on the scant comparison evidence presented by Plaintiff, that Defendant's offered reason for her termination was pretextual. Therefore, I will grant summary judgment on this issue.[2]

### B. ADEA RETALIATION

Plaintiff also alleges that she was retaliated against for complaining about Ms. DelGiorno-Ream's inquiry as to her age and her retirement plans. To establish a *prima facie* case of retaliation in the employment context, a plaintiff must show "(1) that he/she engaged in a protected employee activity; (2) that he/she was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action."

---

[2] Plaintiff seems to place great weight on the fact that, at her deposition, DelGiorno-Ream first testified that she "[did] not recall" if anyone at Defendant hospital asked her opinion regarding Plaintiff's termination, then after a break in the deposition, came back and testified that she had made a recommendation to terminate Plaintiff. (ECF No. 19, Ex. B, pp. 21-22, 67.) Plaintiff claims this testimony is evidence of pretext on the part of Defendant. I disagree, and see no way in which DelGiorno-Ream's changed testimony regarding her input into Plaintiff's termination is evidence of pretext.

13

Burger v. Sec'y of Revenue, 575 Fed. Appx. 65, 68 (3d Cir. 2014)(*citing* Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005)). "A causal connection may be established by showing an unusually suggestive temporal proximity between the protected conduct and the adverse action or 'a pattern of antagonism coupled with timing.'" Emmett v. Kwik Lok Corp., 528 Fed. Appx. 257, 262 (3d Cir. 2013) (citation omitted).

In the instant matter, Defendant does not dispute that Plaintiff's July of 2012 email to Brian Hoffman complaining about Ms. DelGiorno-Ream's retirement inquiry qualifies as protected activity, nor does it dispute that Plaintiff's termination constitutes an adverse action. (ECF No. 18, p. 12.) Defendant argues that Plaintiff's *prima facie* case fails at the third step because she cannot point to any record evidence that there was a causal connection between her protected activity and the termination of her employment nineteen months later, nor can she cite to any evidence that suggests an intervening pattern of antagonism. Upon careful review of the record, I agree that Plaintiff cannot meet the third prong of the *prima facie* case for retaliation.

1. **Temporal Proximity**

Nineteen months passed between Plaintiff's July of 2012 complaint regarding DelGiorno-Ream's comment and her termination in February of 2014. Numerous courts have found that the passage of a similar period of time is too great to show a causal connection between events such as these. *See* Krouse v. American Sterilizer Co., 126 F.3d 494 (3d. Cir. 1997) (finding that the passage of nineteen months between Krouse's filing of an EEOC charge and his being placed on workers' compensation leave was insufficient to establish a causal connection between the EEOC charge and his placement on leave); Burger v. Sec'y of Revenue, 575 Fed. Appx. 65, 69 (3d Cir. 2014)(finding that

14

the passage of 24 months between employee's filing of a discrimination complaint and the employee's subsequent termination was too long to support finding a causal connection between the two acts); Emmett v. Kwik Lok Corp., 528 Fed. Appx. at 262 (finding that a fifteen month gap between Emmett's complaint of age discrimination and his termination is not "unusually suggestive" and does not establish a causal connection between the two events).

In the instant matter, nineteen months passed between the time that Plaintiff complained of DelGiorno-Ream's allegedly discriminatory comment and her termination. Based upon the above case law and the evidence of record, I find that the time span between the protected activity and the alleged retaliation is too long to justify an inference of retaliation. Plaintiff has failed to produce evidence to temporal proximity that shows a causal connection between the two events.

### 2. Pattern of Antagonism

A causal connection may also be established by showing "a pattern of antagonism coupled with timing." Emmett, 528 Fed. Appx. at 262. In attempting to meet the third prong and establish a *prima facie* case of retaliation, Plaintiff argues that "[t]he record is very clear that Plaintiff was subjected to ongoing antagonism once she filed her internal complaint and moreover gave clear indication that she might be filing with the EEOC." (ECF No. 20, p. 14.) As evidence of this alleged antagonism, Plaintiff cites to her December 2012 performance evaluation, which contained "some negative comments," as well as numerous "pretextual write-ups" that she received from DelGiorno-Ream in January, October and November of 2013. (Id.) As further evidence of alleged ongoing

antagonism, Plaintiff points to the fact that Toburen was assigned to "monitor" her, but was never assigned to monitor any other, younger employees. (Id.)

However, a careful review of the record shows that Plaintiff had a long, ongoing history of substandard work evaluations and written warnings, dating back to 2006. "Performance issues existing prior to protected activity may undermine a plaintiff's attempt to establish causation based on an employer's action in response to those performance concerns." Gairloch v. Pa. State Univ., 84 F.Supp.3d 407, 419-420 (M.D. Pa., Jan. 7, 2015); *see also* Reap v. Cont'l Cas. Co., 2002 WL 1498679 (D.N.J. June 28, 2002) (finding that a supervisor's consistency in performance evaluations both before and after a plaintiff's protected activity belied a finding of a pattern of antagonism). Accordingly, Plaintiff has failed to meet her burden of establishing a *prima facie* case of ADEA retaliation through either temporal proximity or a pattern of antagonism and that claim must be denied.

### C. ADA DISCRIMINATION

Plaintiff claims that Defendant "regarded" her as disabled and therefore discriminated against her.[3] To prevail on a "regarded as" disability discrimination claim under the Americans with Disabilities Act, Plaintiff must show that she either "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has [no such impairment] but is treated by a

---

[3] Plaintiff claims in her brief that she was discriminated against on the basis of her disability or perceived disability, but then fails to present any argument whatsoever to support the claim that she is actually disabled within the meaning of the ADA. Therefore, to the extent Plaintiff is still claiming ADA discrimination due to her being actually disabled, summary judgment is granted and that claim is dismissed.

covered entity as having a substantially limiting impairment." Eshelman v. Agere Systems, Inc., 554 F.3d 426, 434 (3d Cir. 2009). In support of this argument, Plaintiff focuses on testimony from several co-workers that she exhibited an "odor" that was "unbearable" and "offensive." (ECF No. 20, p. 18.) Plaintiff also briefly mentions that she had hearing issues that required her to wear hearing aids, and that co-workers testified that her hands shook and that her body appeared to be unsteady. (ECF No. 20, p. 18.)

However, Plaintiff can point to absolutely no evidence in the record that Defendant regarded her body odor, her hearing issues, her unsteadiness or even her anxiety attacks as disabilities. With regards to Plaintiff's odor, DelGiorno-Ream testified that she thought the odor was "related to [Plaintiff's] smoking and asked her if she could not smoke with her windows up." (ECF No. 19, Ex. B, p. 74.) There is no evidence that Defendant regarded her odor as a disability. As to Plaintiff's hearing issues, there is again no evidence that Defendant regarded her hearing issues as a disability. DelGiorno-Ream testified that Plaintiff told her she had problems hearing, and they ordered a new headset for her to see if that would help, but that was the extent of it. (ECF No. 19, Ex. B, pp. 82-83.) "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996). This same logic applies to Plaintiff's hand tremor, which DelGiorno-Ream saw occur on one occasion. The mere fact that Defendant was aware of a tremor in Plaintiff's left hand, without more, is insufficient to establish that Plaintiff was regarded as substantially limited in a major life activity. Accordingly, Plaintiff has

failed to establish a *prima facie* case of disability discrimination and summary judgment is granted on this claim.

### D. ADA RETALIATION

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Krouse, 126 F.3d at 500. Plaintiff alleges that she engaged in a protected activity by informing both her supervisor and Toburen that she had a panic attack, then was terminated two months later. Plaintiff also argues that she informally requested an accommodation from DelGiorno-Ream for her hearing issues. (ECF No. 20, pp. 19-20.)

However, "[s]imply declaring that [she had a panic attack], or even that [s]he is disabled, without more, is insufficient to constitute a protected activity under the ADA." Prigge v. Sears Holding Corp., 2010 WL 2731589, *8 (E.D. Pa., July 9, 2010.) Third Circuit case law requires an employee to provide the employer with both notice of the disability and a request for an accommodation. (Id.) Plaintiff can present no evidence that she requested an accommodation for her panic attacks. Accordingly, Plaintiff's disclosure of her panic attacks alone, without more, does not constitute protected activity under the ADA and there is no basis for a retaliation claim based upon the panic attacks.

Further, as to her hearing issues, Plaintiffs argues that she "informally" requested a new headset from DelGiorno-Ream, which was a request for an accommodation under the ADA. However, the evidence of record merely shows that Plaintiff told DelGiorno-Ream that she had problems hearing on her headset and that she had hearing aids. (ECF

18

No. 19, Ex. B, pp. 82-84.) Plaintiff did not testify that she requested a new headset. Further, DelGiorno-Ream testified that Plaintiff did not fill out an ADA accommodation form or request a new headset. To the contrary, DelGiorno-Ream informally ordered her a new headset. (ECF No. 19, Ex. B, p. 83.) This evidence clearly fails to demonstrate that Plaintiff made a request for accommodation for her hearing disability. Accordingly, because Plaintiff has failed to prove that she engaged in protected activity, she cannot establish a prima facie case for ADA retaliation.[4]

## V.     CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and this case is dismissed. An appropriate order follows.

---

[4] Plaintiff's brief includes a lengthy discussion of the necessity of each party to disclose the names of individuals with discoverable information pursuant to Fed. R. Civ. Proc. 26(a), and claims to be prejudiced by Defendant's failure to comply with this rule. However, Plaintiff fails to state exactly what evidence Defendant allegedly failed to disclose pursuant to Rule 26. If, as suggested by Defendant, Plaintiff is referring to written warnings that she received from prior supervisors who were not identified by Defendant pursuant to Rule 26, I agree with Defendant that those written warnings would be admissible in this matter pursuant to the Federal Rules of Evidence. Accordingly, I will deny Plaintiff's request for sanctions for Defendant's alleged violations of Rule 26.